## CLAPP, ET AL. v. MOCK, ET AL.

1. M. became the indorser for L. of certain bills of exchange, upon an agreement that they should be used in the purchase of the stock of a particular bank, in which both were equally interested, and both to be equally bound for the payment of the bills. L., pursuant to an arrangement with H., transferred the bills to C., in payment of a debt due by H. to C., the latter being ignorant of the agreement between M. and L., relating to the indorsement of the bills: Held, first, that C. could recover of M., the indorser, though L., in the transfer to C., had violated the contract by which the indorsements were made. Second, that if L. was the dupe of H. in the contract by which the bills were transferred to C., the fraud could not be visited on C., who was ignorant of it, and did not participate in it.

Error to the Chancery Court at Montgomery.

The bill was filed by Benjamin Lathrop, and Benjamin Mock, jr., and charges, that the defendant, Clapp, had a real or pretended claim on one Haynes, for $12,800. That Clapp represented

to Lathrop, that Haynes was the owner of ten thousand shares of stock in the Bank of Rome, in Georgia, on which thirty-five dollars per share had been paid, and proposed to Lathrop, to assume the debt due by Haynes to him, and that Haynes should assign one half of his interest in the stock to him. That Clapp proposed to take in payment of the debt of Haynes, drafts of Haynes on Lathrop, indorsed by Mock, upon the house of Cummings & Spyker, in Montgomery. That Haynes confirmed the statements of Clapp, and represented himself to be wealthy, and produced papers tending to prove that he was the owner of a large number of shares in the Bank. That confiding in these representations, the bills were drawn, and handed to Clapp, bearing date the 10th May, 1840. That in consideration of these bills, an agreement was entered into between Lathrop and Haynes, as follows:

"*Rome, Georgia, April* 12, 1840.

Articles of agreement between B. G. Lathrop, of the one part, and C. Haynes of the other part. The said Lathrop & Haynes have this day agreed to combine their interest, which they now have in the Western Bank of Georgia, also to share equally in the stock which either party may hereafter purchase, provided that the said Lathrop, pays to the said J. W. Clapp, twelve thousand eight hundred dollars, half of which is to be paid back to the said Lathrop, in one hundred and twenty days from this date, and the said Lathrop & Haynes do further agree, to join their interests in said bank with R. A. Greene, and Wm. Smith, provided the said Greene and Smith agree to the same.

B. G. LATHROP,
C. HAYNES."

Indorsed—

"Ninety-nine shares has been transferred to B. G. Lathrop, in pursuance of the above, upon which thirty-five per cent. has been paid, less five per cent. off, making $3,291 75. The memorandum below, of the within, is not intended to affect the within agreement. C. HAYNES."

That judgments have been obtained upon the said bills of exchange, against Mock, the indorser. That since the judgments, Lathrop has travelled into Georgia, and ascertained from one Green, the President of the Bank, that Haynes was a swindler, that he never owned any stock in the Bank, having never paid

any thing upon it; that no defence was made to the actions at law, because it was believed the stock was a sufficient security for the debt, &c.

An injunction was granted.

An amended bill was filed, in which it is alledged, that the complainants had agreed to purchase stock in the Bank at Rome, for which purpose, and no other, the bills of exchange were drawn, and indorsed. That at the time an engagement in writing was entered into between complainants, as follows:

" *Alabama, Montgomery county.*

Know all men by these presents, that I, Benjamin Mock, have this day indorsed three bills of exchange, (describing them.) The above described bills, are to be used in purchaing Rome Bank stock, and for no other purpose. The said stock, purchased with said bills, to be equally divided between the said Mock, and B. G. Lathrop, and all benefits arising from the same, either directly or indirectly, is to be shared equally, by the above mentioned parties; and each one is to pay an equal share of the above named bills. Given under our hands and seals, this 12th day of May, 1840.                                        B. Mock, Jr.

B. G. Lathrop."

That both Haynes and Clapp knew of this agreement, previous to the transfer of the bills of exchange, and that the bills of exchange had been executed for the purpose stated in the agreement. That Clapp knew, that Haynes had no stock in the bank. That Mock was a stranger, and had never been at Rome until since the judgment; when he ascertained that Haynes never owned any stock in the Bank, &c.

The defendant, Clapp, by his answer, positively denies all the material allegations of the bill, and states the facts of the case to be, that Haynes was the partner of one Bronough, in some slaves; that Bronough died, and Clapp was sent from Virginia, to settle the affairs of the firm with Haynes. That Haynes was indebted in the sum for which the bills were drawn, including some individual accounts against Haynes, in his hands for collection. That Haynes promised to pay him at Rome, in Georgia, where he professed to have funds. That Haynes failed to do so, and he threatened to sue him, and attach the stock which he understood he owned in the Bank at that place. That Haynes endeavored to prevail on him, to take Lathrop for the debt. That La-

throp promised to pay the debt in Montgomery, from what inducement Clapp did not know. That Lathrop failed to pay in Montgomery, alledging that he could not raise the money, but promised to pay in Mobile. That he went to Mobile, where Lathrop again failed to pay the money, and proposed to give bills of exchange, which Clapp refused to take. That upon his arrival again in Montgomery, he agreed to take bills of exchange for the debt, if Lathrop would procure a responsible indorser. That he proposed the complainant Mock, and Clapp having made inquiries, agreed to take him; and Lathrop set out, as he said, to obtain his indorsement. About a week afterwards he met with Lathrop, near Jacksonville, who informed him that he had the bills, indorsed by Mock, and a transfer of the stock of the Bank from Haynes, which he exhibited, and proposed to return to Rome, to make an examination of the Bank, to see if Haynes had not deceived him. That he accordingly went to the Bank, and assisted by one of the clerks, examined the books of the Bank, as to Haynes' interest, expressed himself satisfied with the result, and filled up, and handed the bills to him, Clapp. He denies any knowledge, that the instrument executed between Mock and Lathrop, was made, but supposed, that he was an accommodation indorser. Denies that he made any representations to Lathrop as to Haynes' being the owner of stock in the Bank, or that he induced, or persuaded him, to become bound for the debts. That understanding that Haynes had some interest in the Bank, he was about to commence a suit to subject it to the payment of the debt, when he was prevented by Lathrop in the mode above described. He denies all fraud, &c.

Haynes also answered the bill, but his answer need not be inserted, as it has no influence on the case.

To prevent a continuance of the cause, the defendant admitted that Lathrop would prove, that the bills of exchange were delivered to him, to be used in the purchase of bank stock, for the benefit of Mock and himself; and that Clapp knew these facts, when he received the bills in payment of the debt of Haynes, &c. All exceptions were reserved to the competency of Lathrop as a witness. It was also admitted that Lathrop had been declared a bankrupt, since this suit was commenced.

Much other testimony was taken, for which see the opinion of the Court.

The Chancellor considering, that it appeared sufficiently, that the bills of exchange were created for a specific purpose, the purchase of stock, and that Clapp knew the fact, he was chargeable as being accessory to a breach of trust, and could not re-. cover on the bills; and accordingly he decreed a perpetual injunction to the judgments recovered at law upon them.

This decree is now assigned as error.

HOPKINS and ELMORE, for plaintiff in error. The answer contains a full denial of all the equity of the bill, and there is no proof but that of Lathrop, who is incompetent because of interest, and because he is a complainant on the record. [2 Ala. Rep. 100; 4 id. 285; 6 id. 97, 488, 442; Gressly Ev. 242; 1 Smith Ch. P. 343; 2 Mad. 415; 1 Vernon, 230; Greenleaf Ev. 405.]

They further contended, that the case made by the complainant, in his bill, and amended bill, was incongruous, and inconsistent. That the answer was fully supported by the proof, where it was not responsive to the bill. Lastly, that Chancery had no jurisdiction, as the defence was purely legal, and no sufficient reason shown for not making defence at law. [5 Porter, 547; 6 id. 24; 7 id. 549; 2 Ala. Rep. 21.]

THOS. WILLIAMS and PECK, contra, contended, that there was testimony sufficient to fasten on Clapp, a knowledge of the purpose for which the bills were made, and he was therefore accessory to a breach of trust. That it was' impossible not to see, that Lathrop, and Mock, had been the prey of the artifices of Clapp and Haynes, as it was perfectly clear, that Haynes never owned any stock in the Bank, and Clapp knew the fact, or at least knew enough to put him on inquiry. [5 Wend. 566.]

As to the jurisdiction of the Court, they contended, that the Court of Chancery had concurrent jurisdiction with the Court of law, in cases of fraud, such as the present.

ORMOND, J.—We shall abstain from the consideration of the question, whether Chancery had jurisdiction of this case, from the omission of complainants to make defence at law, or to account satisfactorily for the omission, because, in our opinion, upon the merits, the case is with the plaintiff in error.

The supposed equity of the bill is, that the bills of exchange,

upon which the plaintiff in error recovered a judgment at law, were indorsed by Mock, upon an agreement with Lathrop, that they should only be employed in the purchase of stock, in the Bank of Rome, Georgia, in which Mock and Lathrop were to be equally interested, and to be paid by them in equal proportions. That with a knowledge of this agreement, between Mock and Lathrop, Clapp received the bills of exchange from the latter, in payment of a debt due by one Haynes, to him, Clapp; Haynes having induced Lathrop to believe, that he was the owner of a large amount of stock in the Bank, when, in truth, he did not own any.

It appears very clear, from the proof, that Haynes had an interest in, or control over, a large amount of the stock of the Bank, and that Lathrop had been at Rome, the place where the Bank was located, endeavoring to obtain some of the stock of the Bank before Clapp had visited Rome, or had any connection, or interview with Lathrop.

Clapp was the agent of an estate, having a large claim against Haynes, and went to Rome with the design of getting payment of the debt, and was there informed by Haynes, that he had made a contract with Lathrop, for a sale of his interest in the stock of the Bank, for the purpose of paying the debt, which Lathrop was to pay in Mobile. This appears from the answer of Clapp, corroborated by the deposition of Haynes. It is also corroborated by the bill itself. In the first bill which was filed, an exhibit is made, by which it appears, that on the 12th of April, 1840, which was about a month before the execution of the bills of exchange, Lathrop made a contract with Haynes, for an equal share of his interest in the stock of the Bank at Rome, for $12,800, half of which Haynes was to pay back to Lathrop, in one hundred and twenty days. This contract, Haynes, in his deposition, says, was made for the express purpose of obtaining money to pay the debt to Clapp. He also states, as does Clapp in his answer, that Lathrop failed to obtain the money in Mobile, according to his expectation, and proposed to give Clapp bills of exchange. It also appears, by the evidence of Pullum, that Lathrop was in Mobile about this time, endeavoring to raise the credit of the Bank. It is therefore very clear, we think, that the allegation of the bill, that Clapp induced Lathrop to become the pur-

chaser of the stock from Haynes, with a knowledge that the latter did not own any stock in the Bank, is without foundation.

It has already been stated, that Lathrop was at Rome, endeavoring to obtain stock in the Bank, and anxious, as the witness, Pullum says, to have an interest in it, before Clapp, who was a stranger in the country, had been at Rome, to obtain payment from Haynes. It also appears that Haynes, whether the owner or not, had the control of a large amount of the stock of the Bank, which, though standing in the name of other persons, he had powers of attorney to sell and transfer. He swears to the fact, positively, himself, and it appears from his testimony, and that of others, that he subsequently caused to be transferred, on the books of the Bank, to Lathrop, five hundred and eighty-seven shares, on which thirty-three dollars had been paid on each share.

There is not a particle of proof in the cause, that Clapp induced Lathrop to make his purchase of the stock of Haynes. He positively denies it in his answer, and is corroborated by Haynes, who says he proposed it to Lathrop himself; and from the testimony of Pullum, a clerk in the Bank, it appears, that the bills were not delivered to Clapp, until Lathrop, by an examination of the books of the Bank, and by obtaining information from the officers of the Bank, had become satisfied of the extent, and value, of the interest of Haynes in the Bank.

The equity set up in the amended bill, is, that Clapp knew of the agreement, between Mock and Lathrop, and of the condition upon which the latter indorsed the bills ; that they were only to be used in the purchase of the stock of the Bank. This is positively denied by Clapp, who states, that after Lathrop had failed to obtain the money in Mobile, to pay him, as he had agreed with Haynes, on the 12th April, 1840, to do, he, Lathrop, proposed to pay in bills of exchange, which Clapp agreed to take, if a responsible indorser was procured. That upon Mock being proposed, he made inquiry, and agreed to take him ; whereupon Lathrop went to obtain it. That he never saw Mock, and always supposed he was a mere accommodation indorser. This denial of knowledge of the true character of the indorsement of Mock, is supposed to be contradicted by the testimony of Haynes, but it does not appear to us, that there is any contradiction between the answer of Clapp, and the testimony of Haynes. Haynes was re-

Clapp, et al. v. Mock, et al.

quired to answer, whether Clapp knew, before he obtained the bills, the purposes for which they were made. In answer to this, he says, that Clapp, "did know that the bills were executed for, and in consideration of purchasing stock, in the Western Bank of Georgia." Now, this, by no fair interpretation, means, that Clapp knew, that Mock was to have any interest in the stock. Clapp himself, distinctly admits in his answer, that he knew, that Lathrop was purchasing stock from Haynes with the bills, at the same time that he expressly denies, knowing any thing of Mock's interest in the transaction, or the character of his indorsement. It appears from a previous deposition of Haynes, that *he* did not know, that Mock had any interest in the stock. He says, he became the drawer of the bills, at the request of Lathrop, and that Lathrop did not inform him, that Mock had any interest. He is therefore, in the answer above quoted, speaking of the bills, and not of the indorsement on the bills. Nor indeed, was the question calculated to elicit any other answer. If it had been intended to inquire of the witness, as to Clapp's knowledge of the contract between Mock and Lathrop, by which the former became indorser on the bills, it should not have been framed in this ambiguous manner, but the attention of the witness should have been directly pointed to it. We cannot understand by his answer, that he intended to affirm Clapp's knowledge of a fact, of which he, a party to the bill, was ignorant. The plain, and evident meaning of the witness is, that Clapp must have known, that the bills were for the purchase of stock, because, as he says in his answer, Clapp had by letter informed him, that Lathrop had failed to pay the money in Mobile, as he had agreed to do, and had promised to pay in bills of exchange. This is a corroboration of the answer, rather than proof to the contrary.

The answer, expressly denying all the material allegations of the bill, and there being no proof in contradiction of the answer, but the evidence which it was admitted Lathrop would give, if competent to testify, it is unnecessary to consider, whether he, a complainant in the bill, could be examined as a witness for his co-complainant, with, or without an order from the Chancellor; the rule being clearly established, that the answer of a defendant responsive to the bill, of facts within his own knowledge, cannot be overthrown by the testimony of one witness, unless it be aided by other corroborating circumstances. None such exist in the

17

case. The answer is clear, explicit, and probable. On the other hand, the case made by the bill originally, and that set up in the amended bill, are essentially dissimilar, if not incongruous. The equity set up in the first bill, is, that Clapp and Haynes fraudulently induced Lathrop to believe, that Haynes was the owner of stock in the Bank, and thus induced the latter to become the purchaser of stock, which had no existence—whilst in the second, it is the knowledge of Clapp, of the agreement between Mock and Lathrop, by which the former agreed to indorse the bills of exchange, in the purchase of stock. There is nothing then, to relieve the case from the operation of the rule.

It appears to have been supposed, that if Haynes was not the owner of stock in the Bank, the bills of exchange would be invalid, in the hands of Clapp. This is certainly incorrect, unless Clapp could be implicated in the fraud of Haynes, which has been shown not to be the case. Clapp, as it appears, was a stranger in the country, endeavoring to collect a debt from Haynes, who, whether the owner of Bank stock, or not, was certainly in possession of large means, and wielding a large amount of money—Lathrop, by his own act, in procuring the bills to be drawn, induced Clapp to relinquish the pursuit of Haynes, to take the bills in payment of the debt, and to discharge him from the debt; and it would be extreme injustice, to visit upon Clapp, the consequence of the imprudence of Lathrop, or the fraud of Haynes, if fraud there was. Nor can Mock be in any better condition, than Lathrop. He entrusted the latter with his name, and if an improper use has been made of it, the consequence cannot be visited upon one ignorant of the facts.

It is, however, by no means certain, that Haynes was not able to comply with his contract with Lathrop. Whether he had stock in his own name or not, it is very clear he had the control of a large amount, He swears that he had the control of more than two thousand shares, more than half of which belonged to himself, and upon which thirty-three per cent. had been paid: and it is certain, that subsequent to his contract with Lathrop, he did cause to be transferred to him, five hundred and eighty-seven shares. Upon this stock, a certificate issued to Lathrop, to be delivered to him, on his paying $10,000 in cash, and executing his note for $9,000 more, and upon his failure to comply, the stock became forfeited to the company.

We are not informed, why this forfeiture was permitted to take place, nor what the value of the stock was in its then condition. If one-third part had been paid on it, as appears to be the inference from Haynes' testimony, it was still of value sufficient, supposing the stock to be at par, to satisfy the bills of exchange.

If, however, Lathrop was the dupe of Haynes, as perhaps may be inferred from Pullum's testimony, where he says, that "Haynes had control of a sufficient interest in said Bank at that time, (the time of the transfer of the stock,) to have secured Lathrop, if he had not wished to put him off upon the Bank, and thereby secure to himself, the interest held by him, which interest he afterwards forfeited, by becoming indebted to the Bank," it would only shew the ability of Haynes to comply with his engagements to Lathrop, when it was made, and that by a subsequent fraudulent contrivance, he overreached him. On what principle of equity, could this be visited upon Clapp, who was neither a party to the contract, or a participant in the fraud.

From every view, which we have been able to take of this case, the Chancellor erred in the decree made by him, enjoining the collection of the judgments, upon the bills of exchange; his decree must therefore be reversed, and a decree be here rendered, dismissing the bill             :